United States District Court
For the Northern District of California

1
2
3
4
5
6
7                      IN THE UNITED STATES DISTRICT COURT
8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                              SAN JOSE DIVISION
10   DANIEL RAMIREZ, individually and on        CASE NO. 5:10-cv-04374 EJD
     behalf of all others similarly situated,
11                                              **ORDER DENYING PLAINTIFF'S**
                                                **MOTION FOR CLASS**
12                  Plaintiff(s),               **CERTIFICATION**
        v.
13                                              [Docket Item No(s). 24]
     UNITED RENTALS, INC.,
14
15                  Defendant(s).
                                          /
16

17        Plaintiff Daniel Ramirez brings this action on behalf of a putative class of employees of

18   United Rentals Northwest, Inc.  See Compl., Docket Item No. 1.  He moves for certification of the

19   class pursuant to Federal Rule of Civil Procedure 23(b)(3).  See Docket Item No. 24.  For the

20   reasons set forth below, Ramirez's motion is denied.

21                              **I.    BACKGROUND**

22        United Rentals is an industrial equipment rental company with 106 branch offices in

23   California.  See Marsh Decl., Docket Item No. 29, at Ex. 6.  At any given time during the class

24   period, these 106 offices employed, on average, 190 total drivers to deliver the equipment to

25   customers.  See Jakubiak Decl., Docket Item No. 3, at  6.

26        Daniel Ramirez was hired by United Rentals in February 2005.  See Ramirez Decl., Docket

27   item No. 26, at 2-3.  Later that year, he was promoted to driver, the position he held until his

28   employment was terminated in February 2010.  Id.

                                              1

1    Ramirez alleges that United Rentals failed to provide him and the putative class members

2    with meal and rest breaks or to compensate them for missed breaks.  Ramirez seeks relief under the

3    California Labor Code, California's Unfair Competition Law, and for unjust enrichment.

4    **A.      California's Meal and Rest Break Laws**

5    California Labor Code § 512 requires United Rentals to provide its employees with the

6    opportunity to take an uninterrupted, unpaid 30-minute meal break during any shift that lasts five

7    hours or more.  See IWC Order No. 7-2001, codified at CAL. CODE REGS. tit. 8, § 11070, at subd.

8    11 ("Wage Order"); see also Brinker Rest. Corp. v. Super. Ct., 53 Cal. 4th 1004, 1040-41 (2012)

9    (employer must provide a "bona fide relief from duty," but need not "police" the break to ensure that

10   no work is done).  The employee is also entitled to a 10-minute paid rest break for every four hours

11   worked.  See Wage Order at subd. 12.  An employee is entitled to an hour's wages in compensation

12   for each meal or rest break missed.  Cal. Lab. Code § 226.7; Wage Order at subds. 11(D), 12(B).

13   Employers are required to maintain accurate records of employee meal breaks.  See Wage Order at

14   subd. 7(A)(3).

15   **B.      United Rentals' Policies and Practices**

16   Owing to erratic delivery schedules, United Rentals does not schedule specific times during

17   the day for its drivers to take meal and rest breaks.  See, e.g., Boyer Decl., Docket Item No. 37-1, at

18   Ex. 1.  Rather, it is up to the driver to pick a time and place.  Id.

19   During the putative class period, United Rentals had no uniform, company-wide procedure

20   for keeping track of its drivers' meal and rest breaks.  See Marsh Decl. at Exs. 2, 3.  Despite the lack

21   of a formal policy, many branch managers configured the company timekeeping software,

22   Workbrain, to automatically deduct 30 minutes each from the time a driver actually logged each day.

23   Id. at Ex. 11 ("In the past, our primary practice for tracking [drivers'] hours and breaks has been to

24   utilize Workbrain pre-set schedules with auto-deduct breaks and to have the employee review the

25   time entries on a weekly basis.").  But not all branch managers automatically deducted time for meal

26   breaks.  See, e.g., Def.'s Compendium of Manager Decls., Dcoket Item No. 38, at Exs. 2, 8, 9.

27   Plaintiff submits declarations from 18 drivers indicating that their delivery schedules were

28   often too busy to allow for full, duty-free meal and rest breaks.  See generally Pl.'s Compendium of

**United States District Court**
For the Northern District of California

2

CASE NO. 5:10-cv-04374 EJD
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Driver Decls., Docket Item No. 27.  Practices for recording missed breaks varied from branch to branch.  In at least some branches that did not automatically deduct time, drivers kept paper time logs of breaks, both taken and missed.  See, e.g., Cuneo Decl. at 15; Sacson Decl. at 6.

**C.     Daniel Ramirez's Employment with United Rentals**

Daniel Ramirez worked as a driver for a San Jose branch of United Rentals for a little more than four years.  See Ramirez Decl. at 2-3. In approximately 95% of his shifts over that period, a 30 minute meal break was automatically deducted from his clocked hours.  See Marsh Decl. at  33. Ramirez claims that no records exist to show that he took those meal breaks; that he was able to take meal breaks only about once or twice per week; that he likewise was not provided all required rest breaks; and that none of the breaks he was able to take were off-duty because he would have to answer his work cell phone if it rang.  See Ramirez Decl. at 24-25, 34-43, 46-49.  Ramirez recalls being told by his branch manager that drivers were told to take breaks, but does not recall any instruction that breaks should be duty-free.  Id. at  26-31. Ramirez points to evidence that no compensatory wage was paid for his missed breaks.

**II.     LEGAL STANDARD**

To certify a class, a plaintiff must first show that four threshold requirements are met:

(1) the class is so numerous that joinder of all members is impracticable ["numerosity"];

(2) there are questions of law or fact common to the class ["commonality"];

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and

(4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"].

Fed. R. Civ. P. 23(a).

Additionally, the proposed class must be defined so that its members are ascertainable and clearly identifiable.  Lamumba Corp. v. City of Oakland, No. C. 05-2712 MHP, 2007 U.S. Dist. LEXIS 81688, at *7-8, 2007 WL 3245282 (N.D. Cal. Nov. 2, 2007).  If the plaintiff satisfies all of these conditions, he then must demonstrate that the class action is one of the "types" prescribed by Rule 23(b).  When a party seeks certification under Rule 23(b)(3), the party must show that the questions of law or fact common to class members predominate over any questions affecting

**United States District Court**
For the Northern District of California

3

1    only individual members, and that a class action is superior to other available methods for fairly and

2    efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

3        Rule 23 is not merely a pleading standard.  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541,

4    2551 (2011).  Rather, the party seeking certification must demonstrate that the certification

5    requirements are in fact met.  Id.  This analysis often overlaps with the merits of the underlying

6    claims.  Id.

7                                   **III.   DISCUSSION**

8        Ramirez seeks to maintain this action on behalf of the class of "all current and former

9    delivery drivers of Defendants employed in the State of California during all applicable statutes of

10   limitations (the 'Class Period')."  See Compl. at 16, 31.

11       United Rentals contends that Ramirez has failed to meet its burden to establish

12   ascertainability, typicality, and commonality.  As will be discussed below, the court agrees with

13   United Rentals that Ramirez fails to establish that there are common issues that will advance the

14   resolution of the litigation.  Accordingly, certification will be denied.

15       **A.    Ascertainability**

16       United Rentals challenges the ascertainability of Ramirez's proposed class on the basis that it

17   employs drivers at several different kinds of branches, the branches are managed differently, and

18   some of its drivers admit to receiving all required breaks.

19       A class must be defined so that it is clear exactly who will be included.  See generally,

20   MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222.  The Court finds that the proposed

21   class is ascertainable.  The class definition is clear in its inclusion of "all current and former delivery

22   drivers."  To the extent there are multiple types of drivers employed by United Rentals, the class

23   includes "all" of them.  The differences that United Rentals identifies relating to the types of

24   branches and classes of drivers are relevant to commonality and predominance, but they have no

25   bearing on whether the class definition is precise.  Indeed, the class definition is so clear that it has

26   allowed United Rentals to create a complete list of the people who fall within the definition.  See

27   Jakubiak Decl. at  6.

28       Although the relevant time period ("during all applicable statutes of limitations") is not

4

1  defined in absolute terms, any ambiguity necessarily will be resolved by this Court's determination

2  of which claims, if any, can proceed on a class-wide basis.  The class definition was presumably

3  drafted with this procedure in mind.  In any event, United Rentals does not argue that the class

4  period is not ascertainable.

5          Thus, the class definition does not itself pose any obstacle to certification.

6      **B.      Numerosity and Adequacy of Representation**

7          United Rentals does not challenge Ramirez's showings of numerosity and adequacy of

8  representation.  The proposed class contains 490 members, many more than could be feasibly joined

9  as parties to this case.  Id.  Based on their sworn statements, Ramirez and his counsel appear capable

10  and ready to fairly represent the class.  See Feder Decl., Docket Item No. 25; see also Ramirez Decl.

11  at 63.  On these grounds, the court finds that the Rule 23(a) requirements of numerosity and

12  adequacy of representation are satisfied.

13      **C.      Typicality**

14          Typicality and commonality are disputed, and are discussed in turn.

15          "The test of typicality is whether other members have the same or similar injury, whether the

16  action is based on conduct which is not unique to the named plaintiffs, and whether other class

17  members have been injured by the same course of conduct."  Hanon v. Dataproducts Corp., 976 F.2d

18  497, 508 (9th Cir. 1992).  All the class members drove trucks for United Rentals, and it appears that

19  all drivers' meal break claims would arise under the same legal theories as the Plaintiff's.  The

20  declarations submitted in support of the present motion show that other drivers experienced the same

21  injury as Ramirez, and that the injury was based on the same kind of conduct.  Ramirez's claims do

22  not appear to be subject to any idiosyncratic facts or defenses.  Thus, Ramirez's claims are

23  "reasonably co-extensive" with those of the other class members.  See Hanlon v. Chrysler Corp., 150

24  F.3d 1011, 1020 (9th Cir. 1998).

25          The only argument advanced by United Rentals against typicality is that, during the class

26  period, it operated three different types of branches that rented different kinds of equipment, and

27  each branch can employ drivers at any of three different levels of commercial licensure.  But having

28  different duties, delivering different equipment, and exerting varying degrees of labor are not

5

1   relevant differences with regard to whether United Rentals paid for missed meal breaks.  The

2   policies and practices of the company did vary, as will be seen below, but none of the variability was

3   dependent on the type of branch or class of driver.  See Marsh Decl. at Ex 4.

4       Accordingly, Ramirez has met his burden of showing that his claims and defenses are typical

5   of the claims and defenses of the class.

6       **D.     Commonality**

7       A prerequisite to certification is the existence of "questions of law or fact common to the

8   class." Fed. R. Civ. P. 23(a).  "Even a single common question will do." Dukes, 131 S. Ct. at 2556.

9   But the common question must not be facile:

10          What matters to class certification . . . is not the raising of common
            'questions' - even in droves - but, rather the capacity of a classwide
11          proceeding to generate common answers apt to drive the resolution of
            the litigation.
12

13  Id. at 2551.

14      "Dissimilarities within the proposed class are what have the potential to impede the

15  generation of common answers."  Id.

16      Ramirez presents a long list of issues that he claims are common to the putative class

17  members. Some representative questions include: (1) Whether Defendant routinely and intentionally

18  discouraged or prevented Plaintiff and other drivers from taking duty free meal [or rest] periods as

19  required by law; (2) Whether Defendant paid one hour extra pay for each day that Plaintiff or other

20  drivers did not take one or more duty free meal breaks [or rest periods] as provided by law; (3)

21  Whether Defendant automatically deducted thirty minute meal periods from time entries for Plaintiff

22  and other drivers without regard to actual times that duty free meal breaks were provided in

23  contravention of California law; and (4) Whether Defendant automatically deducted thirty minute

24  meal periods from time entries for Plaintiff and other drivers even when Plaintiff and other drivers

25  were not provided or permitted one or more duty free thirty minute meal breaks.

26      But while these questions are by formulation common to the class members, Ramirez has not

27  sufficiently shown that any of them can be answered on a class-wide basis.  The only affirmative,

28  particularized fact that Ramirez alleges or adduces as applicable uniformly across the class is United

**United States District Court**
For the Northern District of California

6

United States District Court

For the Northern District of California

Rentals' use of the Workbrain system to track hours and to automatically deduct time for meal breaks. Every other common contention depends on the lack of evidence, such as the lack of a written policy advising employees about their right to breaks, and the lack of a uniform policy about how to document meal breaks.

At the class certification hearing, Ramirez's counsel confirmed that its class contentions are based on the notion that the lack of a policy can itself be a policy. Confronting that very issue, the Supreme Court held in Dukes, that a "'policy' of allowing discretion by local supervisors . . . is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy against having uniform employment practices." Id. at 2554. The evidence in this case likewise suggests a policy of allowing managerial discretion in deciding how to track meal breaks. Importantly, managers could choose whether or not to implement the Workbrain auto-deduct feature. See Boyer Decl. at Exs. B, C.

In the absence of a uniform policy, Ramirez attempts to establish that United Rentals' practices were uniform across the class by introducing declarations from a number of drivers. The declarations are meant to suggest, by their uniformity, that all putative class members-that is, all drivers at every California United Rentals branch-missed breaks pursuant to a uniform practice of overscheduling deliveries and managerial pressure. Ramirez marshals eighteen drivers who recount experiences similar to his own. United Rentals, for its part, presents a number of drivers who affirm that practices at their branches were lawful.

Both parties attack the credibility of the other's declarations. Ramirez submits the testimony from one of United Rentals' declarants that he gave the declaration out of fear that he would be included in layoffs otherwise. See Marsh Decl. at Ex.1. One of Ramirez's declarants, on the other hand, had lost his eyesight and did not know the contents of the declaration that he signed. See Boyer Decl. at Ex. I.

There is no indication that the evidence Ramirez presents can be generalized to the entire class. To the contrary, the weight of the evidence shows that break practices did vary significantly from branch to branch. Some offices carefully kept track of breaks. For example, one San Luis Obispo branch did all timekeeping on paper, and breaks were only ever deducted when specifically

7

United States District Court

For the Northern District of California

1    listed by the driver.  See Cuneo Decl. at 10, 13-16.  The manager of that branch reminded drivers to

2    take meal breaks.  Id.  The Chico branch used automatic time clocks but also required paper logs to

3    be kept.  See Sacson Decl. at 5.  The Madera branch kept a "missed punch log" next to its

4    fingerprint-scanning time clock on which its driver notes "no lunch" on days that he does not take a

5    break.  See Manager Compendium at Ex. 3.  Some managers report meticulous compliance with the

6    wage laws, while the words used by others suggest that they were not as scrupulous during the class

7    period.  Id. at Ex. 8 (implying that no penalty wages were paid for missed second breaks).

8            In Mendez v. R+L Carriers, Inc., No. C 11-2478 CW, 2012 U.S. Dist. LEXIS 68725, 2012

9    WL 5868973 (N.D. Cal. Nov. 19, 2012), another court in this district did certify a class based on the

10   collected declarations of a number of drivers who alleged that they were pressured to skip meal

11   breaks owing to their company's busy delivery schedule.  That case is distinguishable on two

12   grounds.  First, that court found no negative indications of the supporting declarations' reliability.

13   Second, the opposing declarations in Mendez spoke only to the merits of the underlying claim,

14   rather than the certification issue of commonality.

15           The facts of the present motion weigh even more heavily against certification than those in

16   Villa v. United Site Services of California, Inc., No. 5:12-CV-00318-LEK, 2012 U.S. Dist. LEXIS

17   162922, 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012), in which certification was denied because

18   individual issues predominated over common ones.  In Villa, the court did find a common question:

19   whether the defendant's "policy or practice of deducting time from its workers' shifts for off-duty

20   meal breaks whether or not those breaks were taken" was illegal.  2012 U.S. Dist. LEXIS at *17.  In

21   that case, the defendant's own witnesses confirmed that there was a common automatic deduction

22   policy; no contrary evidence was presented.  Id.  Here, uncontroverted evidence shows that practices

23   varied from branch to branch, such that there was no one common policy.

24           The evidence submitted on this motion shows that United Rentals left meal break compliance

25   up to its branch managers, and that the managers employed different strategies to track wages owed

26   with varying degrees of success.  United Rentals' gave the managers this discretion at its own peril,

27   for it does appear that many penalty wages went unpaid.  But Ramirez fails to show how any

28   common proof will bring the class members closer to establishing their right to recovery.  Following

8

1  the teaching of <u>Dukes</u>, class certification is therefore inappropriate.

2      **E.**    **Predominance**

3      All of the viable claims raised in the complaint will require proof of missed meal or rest

4  breaks.  As discussed in the commonality section above, proof will vary from branch to branch, and

5  from driver to driver.  Since the truly disputed issues are not amenable to common proof, individual

6  issues predominate.

7      **F.**    **Other Claims**

8      The only additional basis on which Ramirez moves for certification is United Rentals'

9  practice of rounding clock punches that occur within five minutes of a scheduled start time to the

10  scheduled time.  In other words, if a driver was scheduled to begin work at 8:00am, any punch that

11  occurred between 7:55am and 8:05am would register as having occurred at exactly 8:00am.  This

12  practice does not independently justify certification for several reasons.

13      First, the rounding practice is not mentioned anywhere in the complaint.  Rather, it was

14  identified for the first time in Ramirez's class certification motion.  Second, the rounding practice is

15  plainly legal.  Ramirez argues that it deprives drivers of time worked.  For example, if a driver

16  clocked in between one and five minutes early, he would not be paid for those minutes of work.  But

17  United Rentals shows that the practice works both ways: if a driver clocked in between one and five

18  minutes late, he would be paid for those minutes he did not work.  <u>See</u> Boyer Decl. at Ex. C.  Such a

19  policy is specifically permitted by the state executive agency tasked with enforcement of the wage

20  laws.  <u>See</u> Cal. Div. of Labor Standards Enforcement Policies and Interpretations Manual §§ 47.1 &

21  47.2 (2002).  Although the class certification procedure is not the place to test the merits of a claim,

22  it does not follow that a court must blindly certify a class on a clearly meritless ground.

23      Ramirez's other claims - his first, second, third, fifth, sixth, and seventh causes of action - are

24  otherwise derivative of the meal and rest break claim, and they stand or fall along with it.  <u>See, e.g.</u>,

25  <u>White v. Starbucks Corp.</u>, 497 F. Supp. 2d 1080, 1089-90 (N.D. Cal. 2007).  Certification of those

26  claims is inappropriate for the same reasons that Ramirez's meal and rest break claims do not

27  warrant class treatment.

28

**United States District Court**
For the Northern District of California

9

**IV.    CONCLUSION**

The evidence submitted for this motion suggests, at the very least, that many of United Rentals' drivers did not receive all the pay they were due.  The facts in Ramirez's declarations, if proven true, could establish that he is entitled to thousands of dollars in unpaid wages.  The same may be true for other drivers. But Ramirez has not shown that any meaningful part of that case can be resolved for all of United Rentals drivers' at once.

Plaintiff's motion to certify the class is therefore DENIED.  Pursuant to the court previous order (Docket Item No. 47), the parties shall file a joint case management conference statement within fourteen days of the date this Order is filed.

**IT IS SO ORDERED.**


Dated:  June 12, 2013

EDWARD J. DAVILA
United States District Judge

United States District Court
For the Northern District of California

CASE NO. 5:10-cv-04374 EJD
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION